IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,               Case No. 3:02 CR 707

-vs-

                                      MEMORANDUM OPINION

JOHN RICHARD JAMIESON,

                Defendant.

KATZ, J.

This matter is before the Court on the Petitions of Third Party Claimants Laura L. Jamieson (Doc. Nos. 776 and 823), Village of Ottawa Hills (Doc. No. 731), and Floralandscape, Inc. (Doc. No. 755). Also before the Court are the government's motion to dismiss the claims of the unsecured creditors (Doc. No. 867) and motion for partial summary judgment against Mrs. Jamieson's claims (Doc. No. 887). For the reasons stated below, Mrs. Jamieson's petitions are granted in part and denied in part, the Village's and Floralandscape's petitions are denied and the government's motions are granted.

**PROCEDURAL HISTORY**

Following the trial and conviction of John Richard Jamieson, on July 3, 2003, this Court granted the government's request for a preliminary order of forfeiture. Of the various petitions filed thereafter, only three petitions remain.

On August 11, 2003, the Village of Ottawa Hills asserts a legal interest for delinquent income taxes for the years 1997 and 1998. (Doc. No. 731).

On September 11, 2003, Floralandscape asserted its interest pursuant to a contract for services pertaining to Forestview Drive and Talmadge Road properties for the period of March through October 2000.  (Doc. No. 755).

Mrs. Laura L. Jamieson filed her initial petition on September 22, 2003, asserting "her right, title and interest in and to said property . . . superior to that of the United States."  In that petition Mrs. Jamieson identified personal property (as listed in Ex. A of her submission) and real property, described as the Forestview Drive property and Talmadge Road Property.

Mrs. Jamieson submitted and the Court accepted her second amended third party claim (Doc. Nos. 808 and 811) wherein she asserted her right to the real property identified as "The Leelanau Cottage", a 1999 Ford Econoline Van, a 1994 Jeep Wrangler, specific jewelry received as gifts, and "[a]ny other property acquired during the marriage as her interest in marital property."     In December 2003, Mrs. Jamieson again amended her petition to include her claim to the $20,000 gift made to the University of Michigan which was ultimately forwarded to the government. (Doc. Nos. 823 and 848).  Following a hearing on the petitions, Mrs. Jamieson filed a notice of partial withdrawal of petition as pertaining to personal property based upon an agreement between her and the government.  (Doc. No. 948).  Under this agreement, real property, cash and jewelry or those items excluded from the agreement with the government remain the subject of her petition.

Following a hearing on the aforementioned petitions and all proceedings having been concluded as to the sentencing aspect of this action, the Court proceeds with the final aspect of this case.

**THIRD PARTY INTERESTS UNDER FORFEITURE STATUTE**

Third party interests in property forfeited are addressed in 21 U.S.C. § 853(n) and require the claimant to comply with the following sections:

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

(3) The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

Where compliance with these facial requirements is achieved, asserted interests must be established by a preponderance of the evidence in one of the following ways:

(A) the petitioner has a legal right, title, or interest in the property, and such right, title or interest renders the order of forfeiture invalid in whole or in part because the right, title or interest was vested in the petitioner rather than the defendant or was superior to any right, title or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

The third party claimant bears the burden of proof to establish an ownership interest. *United States v. Dean*, 835 F.Supp. 1383 (M.D. Fla. 1993). Although the federal forfeiture statute establishes the standard under which the interest may be forfeited, it is state law which must be consulted to determine the property interest. *United States v. Hooper*, 229 F.3d 818, 820 (9th Cir. 2000). With this legal background in mind, the Court now turns to the parties' contentions.

**LAURA L. JAMIESON'S PETITION**

*A. Facial Challenge*

Initially, the government challenges the facial validity of Mrs. Jamieson's petition on the basis that her initial petition was not signed under the penalty of perjury as required under Section 853(n)(3).  The purpose behind this requirement is to protect the assets and the government's interest therein against false claims.  Although strict compliance is generally required, "'a court has discretion in appropriate circumstances to depart from the strict compliance standard.'" *United States v. Joyeros*, *S.A.*, 410 F.Supp.2d 121, 124 (E.D.N.Y. 2006) (Weinstein J.), quoting *United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993).

In this instance, in her initial petition, Mrs. Jamieson averred as follows:

> Based upon the foregoing, Petitioner asserts that her right title and interest in the personal property and her share of the real estate is superior to that of the United States and other parties herein.  Petitioner hereby certifies that she has reviewed the foregoing facts and they are true and correct to the best of her personal knowledge, information and belief.

(Doc. No. 776 at p.4.)  This statement was sworn, notarized and appended to her initial petition.

Although Mrs. Jamieson's sworn statement is bereft of the magic words, her sworn statement, in this Court's view, is sufficient to comport with the spirit and purpose behind the statute.  Moreover, as noted by her counsel, the statement is subject to perjury under 18 U.S.C. § 1621.  Accordingly, the government's facial challenge to her petition is not well taken.

*B. Ownership Interests*

   1. Michigan Vacation Home

At the hearing, Mrs. Jamieson testified that the vacation home in Michigan was purchased in May of 1996.  Her testimony is corroborated by the documents attendant to her deposition.  The

4

deed to the Leland, Michigan property reflects that it was titled conveyed to Defendant Jamieson "as a married man." In October 1996, Defendant Jamieson and Mrs. Jamieson executed a Declaration creating Cottage Management Enterprises, which Mrs. Jamieson believed to be for estate planning purposes. Approximately three months later, Defendant Jamieson transferred ownership of the property to the trustee of Cottage Management Enterprises, Thomas Kahle. At Defendant Jamieson's trial, the government established through the testimony of Greg Nelson that Cottage Management Enterprises was designed to conceal ownership and control of the Leland, Michigan property.

The property was ultimately sold to avoid a pending foreclosure and the proceeds placed in an escrow account and drawn upon following Court approval to finance Defendant Jamieson's $7,500 monthly living allowance. At the time the funds were seized pursuant to an order of forfeiture, only $80,000 remained in the account.

On June 24, 2003 and following a short trial on the forfeiture claim, the jury returned its verdict finding, in part, that the property located at 4208 N. Manitou Train, Leland Michigan and the account holding the proceeds from the sale of this property was involved in or traceable to the money laundering violations contained in Counts 2 through 158 of the Indictment against Defendant John Richard Jamieson. (Doc. No. 694 at p.7.)

At the hearing on her petition and when asked what her understanding of the interest in the cottage was, Mrs. Jamieson stated that "[t]hat it was our life-long dream and that was ours together and that we were going to retire there together." She also testified as to the purchase price.

As the property was conveyed to Defendant Jamieson as "a married man," under Michigan law, no tenancy by the entireties was created. *See Sigilai v. Security Pacific Executive,* 1996 WL 33349445 *1, fn.1 (Mich. App. 1996). Therefore, Mrs. Jamieson's interest cannot be superior to that of the government. *See United States v. Certain Real Property Located at 2525 Leroy Lane, West Bloomfield Michigan*, 910 F.2d 343 (6th Cir. 1990), *cert. denied sub nom.*, *Marks v. United States*, 499 U.S. 947 (1991). Mrs. Jamieson cannot establish that her marital interest was anything other than inchoate at the time the Defendant purchased the property or transferred it to the trust. There is no evidence to demonstrate that Mrs. Jamieson contributed to the purchase of Leland, Michigan property. She has not established how she qualifies as a bona fide purchaser for value. Although her marital interest was transferred to Cottage Management Trust, ultimately determined to be a sham trust, a reversion of that interest (as argued by her counsel) does not transform her inchoate interest into an interest superior to that of the government. Having considered the entire record, the Court finds that Mrs. Jamieson has not established a valid third party ownership interest to the Leland, Michigan property under Section 853(n) by a preponderance of the evidence.

    2.  Ottawa Hills Property

The property located at 4333 Forestview was deemed as forfeitable property by the jury's special verdict. (Doc. No. 694 at p. 6.) Viewing this property against the relevant money laundering transactions, there appears to be no dispute that under the relation-back doctrine of Section 853 (c) was vested in the government at the time Defendant Jamieson utilized those funds to purchase the Forestview parcel. The date of those transactions were November 20, 1997 (Count 82 transaction) and November 24, 1997 (Counts 83 and 91 transactions). Therefore, under

Section 853(n)(6)(A), the petitioner must establish by a preponderance of the evidence that: (1) her legal right, title or interest in the property was vested in her or superior to that of Defendant Jamieson at the time of the commission of the acts giving rise to the forfeiture; or (2) she was a bona fide purchaser for value of the right, title or interest.

On October 9, 1997, a warranty deed was executed for the property by the previous owners to James Gormley, Trustee of the Ottawa Hills Land Trust.  At the closing, Mrs. Jamieson testified that she executed the Ottawa Hills Land Trust[1] which authorized James Gormley to take title of the Forestview property as trustee.   At that time she also executed a Collateral Assignment of Land Trust Beneficial Interest[2] which pledged the property as security for a loan from Caicos Covenants, Ltd.  The deed was received and recorded on November 25, 1997 by the Lucas County Recorder.

Mrs. Jamieson testified that she understood that the Forestview property was owned by she and her husband as a married couple.  She contends that her beneficial interest in the Ottawa Hills Land Trust is evidence of her ownership interest.  Alternatively, she contends that even assuming the trust is deemed invalid, there is a reversion which accords her a tenant in common interest as her interest was effective on the date of execution of the deed.

The Forestview property was never titled in Mrs. Jamieson's name, therefore, she did not have legal title to property.  Legal title to the trustee was effected upon recording of the deed. *Kinasz-Reagan v. Ohio Dept. Of Job & Family Servs.*, 164 Ohio App.3d 458, 462, 842 N.E.2d 1067, 1071 (Ohio App. 8th Dist. 2005) (A deed must be delivered to be operative as a transfer of

---

[1] This document is dated November 21, 1997.

[2] This document is dated November 24, 1997.

ownership of land, for delivery gives the instrument its force and effect.  Recording the deed perfects delivery thereof. ) To the extent that Mrs. Jamieson claims a beneficial interest therein, the Ottawa Hills Land Trust was deemed to be a sham trust.  To validate a beneficial interest through a sham entity is to "foster manipulation of ownership" and contrary to the policy of establishing a valid ownership interest.  *See United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000) (citation omitted).  *See also United States v. McHan*, 345 F.3d 262, 276-278 (4t Cir. 2003) (district court property disregarded agreements attempting to avoid forfeiture).

Assuming the trust invalid, reversion of legal title cannot reside with Mrs. Jamieson as she never had legal title of the property.  *See Central Nat'l Bank v. Perry*, 1990 WL 40581 (Ohio App.8th Dist. 1993) (wife who did not have recorded title to the property was not accorded tenant in common status with husband).

The same analysis applies to the Talmadge Road property and although the petitioner states a claim for this property, there is no evidence to establish a third party interest which trumps that of the government nor does the petitioner submit an argument in favor of this property in her opposition to the government's motion.

The petitioner's claim of a dower interest in all the real property owned by Defendant Jamieson is also without merit.  As correctly noted by the government, any dower interest is inchoate or unrealized until death of the spouse or divorce.  The right of dower, however, is subject to encumbrances, infirmities or incidents at the time of the seizin.  "[W]hen the law steps in and divests the owner of his seizin due to an infirmity or incident of his ownership which existed at the time the owner became seized of the property, or at the time of marriage, such act and policy of the law extinguishes an inchoate dower right in the property." *Carmack v. Carmack*,

8

7 Ohio Op. 313, 22 Ohio L. Abs. 702, 704 (1936).  The Defendant's use of laundered funds and conviction thereof to purchase property would, in this Court's view, qualify as an incident of ownership sufficient to extinguish an inchoate dower right in this instance.

Additionally, there was no death or divorce which occurred to cause petitioner's dower interest to mature prior to the time the property was vested with the government under the relation back doctrine.  *See State of Ohio v. Thrower*, 81 Ohio App.3d 15, 610 N.E.2d 433 (Ohio App.3d 1991) (wife asserting inchoate dower interest against real property could not prevail where husband was found to have violated Ohio RICO statute and the property was forfeited to the state).   For the above stated reasons, the Court finds Mrs. Jamieson has not established a third party interest in either the Forestview or Talmadge properties by a preponderance of the evidence and the petition is denied as to this claim.

3. University of Michigan Contribution

Mrs. Jamieson also seeks return of a $20,000 contribution made by her and Defendant Jamieson to the University of Michigan Athletic Department in June 2001.  The Court's preliminary injunction order in *United States v. Jamieson*, Case No. 00 CV 7312, froze all of Defendant's assets and granted petitioner and her husband a living allowance of $7,500.00 per month.

The preliminary order of forfeiture in the case *sub judice*, does not encompass the $20,000 contribution.  Pursuant to the agreement between the University of Michigan and the government, return of that contribution is based upon the government agreeing to forego a future claim against the University and the scholarship fund in connection with the above-captioned criminal forfeiture.  As the $20,000 contribution is not a part of the order of forfeiture, this Court is

without authority to consider a request under Section 853(n). Therefore, Mrs. Jamieson's petition is denied as to return of this item.

    4. <u>Jewelry</u>

With regard to the jewelry at issue, Mrs. Jamieson testified, without objection, during the hearing as to when those items were acquired. Accordingly, the Court finds that petitioner has established a third party interest in these items by a preponderance of the evidence and the petition is granted as to those items.

### **VILLAGE OF OTTAWA HILLS PETITION**

The Village asserts a claim in the amount of $103,701.50, as well as interest and costs, which represents a claim for unpaid income taxes for the years 1997 and 1998. The Village filed a certificate of judgment with Lucas County on August 3, 2001. The Village's lien interest became a judgment lien on the day it was filed and recorded with the clerk of court. Ohio Rev. Code § 2329.02.

The Village's petition, however, must fail as it has not demonstrated that it occupies the status of a bona fide purchaser for value. As correctly noted by the government, Ohio does not accord judgment lien creditors bona fide purchaser for value status. *Basil v. Vincello*, 50 Ohio St.3d 185, 190, 553 N.E.2d 602, 607 (1993). Nor has the Village demonstrated that at the time the lien was filed it was reasonably without cause to believe that the property was not subject to forfeiture.

Accordingly, the Court finds the Village has failed to establish its claim as a matter of law to its Section 853(n) petition and denies the same.

**FLORALANDSCAPE, INC. PETITION**

Floralandscape also submits a petition seeking title and interest in the amount of $13,534.79, which represents landscaping work performed at the Ottawa Hills property during the period March through October 2000. It's certificate of judgment was filed in Lucas County on May 23, 2001.

Like the position of the Village above, Floralandscape has not established a bona fide purchaser for value status under Section 853(n). Prior to the time Floralanscape filed its certificate of judgment, a series of articles regarding Defendant Jamieson had appeared in the Toledo Blade. The Court is troubled that under the law and in this particular instance, a judgment lien creditor who provided services to preserve the value of the property is not accorded an exception in order to be awarded relief. That being said, Floralandscape is in the position identical to the Village in that its judgment lien status cannot trump the government's interest. Nor has the petitioner established that it was reasonably without cause to believe that the residence could be subject to forfeiture. *See United States v. McClung*, 6 F.Supp.2d 548 (W.D. Va 1998) (judgment lien creditor interest could not circumvent government forfeiture interest).

Therefore, the Court has no choice but to find that Floralandscape Inc.'s petition must be denied as it has not demonstrated by a preponderance of the evidence that it is entitled to a third party interest superior to that of the government.

**CONCLUSION**

For the reasons stated above, the Petitions of Laura L. Jamieson (Doc. Nos. 776 and 823) are denied as to real estate and the $20,000 contribution but granted as the jewelry listed in Attachment A of the personal property settlement with the government. The Petitions of the Village (Doc. No. 731) and Floralandscape (Doc. No. 755) are denied. The government's motion

11

to dismiss (Doc. No. 867) regarding the unsecured creditors is granted.  Finally, the government's motion for partial summary judgment (Doc. No. 887) is also granted.

    IT IS SO ORDERED.

                                              s/ *David A. Katz*
                                              DAVID A. KATZ
                                              U. S. DISTRICT JUDGE